**IN THE UNITED STATE DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**ELITE AVIATION SERVICE, LLC**                         **PLAINTIFF**

**VS.**                     **NO. 5:19-cv-05134-PKH**

**ACE POOLS, LLC and TRACY WELCHEL**            **DEFENDANTS**

**ANSWER AND COUNTERCLAIM BY DEFENDANTS**
**ACE POOLS, LLC and TRACY WELCHEL**

COMES NOW, Defendants Ace Pools, LLC ("Ace") and Tracy Welchel ("Welchel") by and through their attorneys, Natural State Law, PLLC, and hereby answers and counterclaims the Plaintiff's complaint as follows:

**INTRODUCTION**

1. The Plaintiff holds itself out to the public as a Federal Aviation Administration ("FAA") certified aircraft maintenance facility and therefore that it does aircraft repairs and alterations in accordance with FAA rules and regulations. Contrary to Plaintiff's advertisements and representations, in the present case, the Plaintiff did not follow FAA rules and guidance. Plaintiff's acts, omissions, and conduct were so grievous and violated so many FAA regulations, that they transformed a previously safe airplane into one that is dangerous and not safe to fly. The acts were so grievous, that the Plaintiff maintenance facility, is now the subject of an investigation by the FAA as to this and other airplanes they have performed work on as FAA certified airplane mechanics.

1

2.      As background, Defendants delivered its aircraft to the Plaintiff maintenance facility for the purpose of upgrading the radios and navigation portions of the plane.  When the airplane was delivered to the Plaintiff maintenance facility it was safe to fly, or in terms used by the FAA, "Airworthy."

3.      The manager at the Plaintiff maintenance facility promised the Defendants the work would be completed quickly, professionally, and most importantly, in compliance with FAA and manufacturer's specifications.  After several delays, in April of 2019 the Plaintiff maintenance facility claimed the upgrades were complete and told the Defendants that the airplane was safe to fly with the new upgrades.

4.      After a short time, the Defendants suspected things were not right with its airplane.  Based on the delays and other events, the Defendants had lost confidence in the Plaintiff maintenance facility and therefore returned home to Oklahoma City to confer with other pilots and mechanics.  The Defendants reported symptoms of the problems to its mechanic and to another instructor rated pilot who was familiar with the plane before it was brought to the Plaintiff maintenance facility.  The mechanic repaired the most visible malfunction, and the instructor pilot volunteered to fly the plane to determine if there were other problems with the plane.

5.      At that time, the Defendants, mechanic, and instructor pilot thought the extent of the problems were the result of and limited to the upgraded components themselves.  They decided another avionics facility should inspect the components, and the plane was brought to a maintenance facility in Fayetteville, Arkansas.

6.      When the maintenance facility in Fayetteville, Arkansas performed its initial inspection it determined that;

a)      the previous maintenance facility had not installed the components correctly – not in accordance with FAA rules and not in accordance with the manufacturer's specifications,

b)      in the course of installing the components it had inflicted severe damage to structural components of the airplane,

c)      the damage done to the plane by the Plaintiff maintenance facility was such that the plane was no longer safe to fly, and

d)      the plane may not be repairable, and if it is, it may be at a cost that exceeds the value of the airplane.

## **VENUE AND JURISDICTION**

7.      Venue is proper as the Defendants have removed this action, originally filed in the Circuit Court of Washington County, Arkansas, in accordance with 28 U.S.C. § 1391(b). Personal jurisdiction is proper in this federal district and court because the Plaintiff is a citizen and is domiciled in this district, the acts and omissions occurred in this district, and the Defendants are seeking a counterclaim for acts, and omissions against the Plaintiff in this federal district.  In accordance with 28 U.S.C. § 1332 there is complete diversity, as the parties are citizens of separate states and the amount in controversy exceeds $75,000.

## **ANSWER**

8.      Defendants admit the allegations in paragraph 1 of Plaintiff's complaint.

9.      Defendants admit the allegations in paragraph 2 of Plaintiff's complaint.

10.     Defendants admit the allegations in paragraph 3 of Plaintiff's complaint.

11.     Defendants deny the allegations in paragraph 4 of Plaintiff's complaint.

12.     Defendants admit in part and deny in part the allegations in paragraph 5 of

Plaintiff's complaint. Defendants admit to the identification of the aircraft and the reason it was brought to Plaintiff's business, but denies they breached the contract, committed conversion, and state all acts taken by Defendants was for the purpose of covering, or mitigating further damage to the aircraft.

13.     Defendants admit the allegations in paragraph 6 of Plaintiff's complaint.

14.      Defendants admit in part and deny in part the allegations in paragraph 7 of Plaintiff's complaint. Defendants admit paying for maintenance as it was billed but were under the erroneous impression that the work was completed in accordance with FAA standards, as is required by a repair facility that is FAA certified. Defendants admit to increasing the scope of work but with the implied understanding it would be completed in accordance with FAA standards.

15.     Defendants admit the allegations in paragraph 8 of Plaintiff's complaint.

16.     Defendants admit in part and deny in part the allegations in paragraph 9 of Plaintiff's complaint. Defendants deny the work was complete because it was not performed with the workmanship required by the FAA. Defendants admit a final flight was scheduled for the first week of April, 2019.

17.     Defendants admit in part and deny in part the allegations in paragraph 10 of Plaintiff's complaint. Defendants admit the date they were last at Elite Aviation Service, LLC ("Elite"), was April 2, 2019, and that they did not return the airplane to Elite. Defendants intention to "settle up" was conditioned upon Elite's satisfactory completion of the contracted work, which was not done.

18.     Defendants admit the allegations in paragraph 11 of Plaintiff's complaint.

19.     Defendants admit in part and deny in part the allegations in paragraph 12 of

Plaintiff's complaint.  Defendants admit that there was an acceptance flight.  Defendants admit that after an extended period of arguing and pleading with the Plaintiff to fix the plane they sent the text in frustration after the flight.  Defendants admit that they did not intend to pay the money requested by Plaintiffs.  Defendants deny that the problems with the avionics were alleged; they were very real.

20.     Defendants admit in part and deny in part the allegations in paragraph 12 of Plaintiff's complaint.  Defendants admit Elite asked for additional money via email on or about April 4, 2019, and that the airplane is 34 years old.  Defendants deny the allegations that the allegations of damage were frivolous or that the notification of a third party was intended to avoid Elite's invoice.

21.     Defendants deny the allegations in paragraph 14 of Plaintiff's complaint.

22.     Defendants admit the allegations in paragraph 15 of Plaintiff's complaint.

23.     Defendants admit or deny the allegations in paragraph 16 of Plaintiff's complaint as stated previously in this Answer.

24.     Defendants deny the allegations in paragraph 17 of Plaintiff's complaint.

25.     Defendants deny the allegations in paragraph 18 of Plaintiff's complaint.

26.     Defendants deny the allegations in paragraph 19 of Plaintiff's complaint.

27.     Defendants deny the allegations in paragraph 20 of Plaintiff's complaint.

28.     Defendants admit or deny the allegations in paragraph 21 of Plaintiff's complaint as stated previously in this Answer.

29.     Defendants deny the allegations in paragraph 22 of Plaintiff's complaint.

30.     Defendants deny the allegations in paragraph 23 of Plaintiff's complaint.

31.     Defendants deny the allegations in paragraph 24 of Plaintiff's complaint.

32.     Defendants deny the allegations in paragraph 25 of Plaintiff's complaint.

33.     Defendants lack sufficient knowledge to know what amendments Plaintiff intends to make.

34.     Defendants deny each and every allegation in Plaintiff's complaint not admitted to.

<u>**AFFIRMATIVE DEFENSES**</u>

35.     Defendants plead affirmatively that the Plaintiff lacks standing to initiate this action.

36.     Defendants plead affirmatively the failure to join necessary parties.

37.     Defendants plead affirmatively that a complete and equitable relief will not be possible without joining additional parties.

38.     Defendants plead affirmatively the defense of failure to plead elements for causes of action pursuant to Ark. R. Civ. P. 8 and 12.

39.     Defendants plead affirmatively the defense of failure of consideration.

40.     Defendants plead affirmatively the defense of failure of to comply with FAA rules and regulations resulting in the airplane not being Airworthy.

41.     Defendants plead affirmatively the defense of prior breach.

42.     Defendants plead affirmatively the defense of denial of any agreement.

43.     Defendants plead affirmatively the defense of set-off.

44.     Defendants plead affirmatively the defense of recoupment.

45.     Defendants plead affirmatively the defense of accord, release and satisfaction.

46.     Defendants plead affirmatively the defense of failure to perform conditions timely and in good faith.

47.     Defendants plead affirmatively the defense of fraud, unfair and deceptive trade practices, false, deceptive, and unconscionable trade practices in the State of Arkansas.

48.     Defendants plead affirmatively the defense of acting professionally, reasonably, and competently as a professional airplane mechanic in performing repairs in accordance with industry standards, manufacturers specifications, and FAA regulations.

49.     Defendants plead affirmatively the defense of negligence.

50.     Defendants plead affirmatively the denial of any ownership interest by Plaintiff.

51.     Defendants plead affirmatively the defense of failure to comply.

52.     Defendants plead affirmatively failure to plead with specificity damages.

53.     Defendants plead affirmatively failure to mitigate any alleged damages.

54.     Defendants plead any punitive damages award violates the Due Process Clause of the United States Constitution.

55.     Defendants plead affirmatively any punitive damages award violates the Due Process Clause of the United States Constitution and Arkansas law in that awards involving monetary damages and breach of contract against multiple parties not from Arkansas may not involve evidence or an award of exemplary or punitive damages under Arkansas law or violate Defendants' constitutional rights.

56.     Defendants plead affirmatively any punitive damages may not be awarded for any actions committed across state line and involving multiple parties.

57.     Defendants plead affirmatively that under Arkansas law that they have incurred costs, expenses and attorney's fees as the result of Plaintiff's actions or inactions.

58.     Defendants plead affirmatively and cross-claim for attorney's fees under Arkansas law pursuant to Ark. Code Ann. § 16-22-308 and § 16-22-309, § 4-88-113(f), and

reserve all other claims as further facts are obtained in discovery.

## COUNTERCLAIMS

## COUNT 1
## NEGLIGENCE

59.    Defendants incorporate by reference the preceding paragraphs in this Answer as though stated herein word-for-word.

60.    Arkansas law provides the following essential elements for the offense of negligence; (1) the existence of a duty on the part of one party to conform to a specific standard of conduct to protect the second party; (2) breach of that duty by the first party; (3) injury to the second party actually and proximately caused by the first party's breach; and (4) resulting damages to the second party or his property. *Cross v. W. Waste Indus.*, 2015 Ark. App. 476, 7, 469 S.W.3d 820, 825 (2015).

61.    Elite entered into a contract with Defendants to install avionics upgrades on Defendants' airplane.

62.    Upon entering into a contract with the Defendants, Elite assumed a duty to the Defendants to upgrade the avionics in a manner that was in compliance with FAA rules, manufacturer's specifications, and a duty to not make the airplane dangerous.

63.    While under Elite's control, alterations were made to the airplane that do not comply with manufacturer's specifications or with FAA mandates, which made the airplane dangerous and unsafe to fly.

64.    Elite had a duty of care, to act reasonably, and prudently in accordance with FAA rules and regulations so that after their alteration the aircraft was Airworthy.

65.    Elite failed to act reasonably and prudently and breached its duty of care when, among many other discrepancies it:

a)      Drilled at least three holes through a structural member of the aircraft, a "bulkhead" in blatant violation of FAA rules and manufacturer's specifications.

b)      Failed to properly install critical rivets in multiple sections of the aircraft thereby making the aircraft dangerous to fly.

c)      Failed to secure a "bridle cable," thereby allowing it to rub against, and possibly bind or sever another cable which is used to control the aircraft.  If the cable which controls the aircraft binds or is severed, the pilot will lose control of the aircraft.

66.    Elite's actions and malfeasance were so egregious that its actions are now the subject of an FAA investigation.

67.    The damage caused by Elite was hidden, concealed, and not readily discoverable without a detailed inspection by a qualified, FAA certified, mechanic.

68.    The damage to Defendants' airplane is such that the airplane is dangerous.  Elite breached its duty to conform to the FAA standards and therefore breached its duty to Defendants.

69.    By not conforming to FAA standards, the Defendants were harmed.  Defendants aircraft was not safe to fly when Plaintiff returned the aircraft to service and allowed Defendants to fly it.

70.    Preliminary inspections reveal that the cost to repair Plaintiff's damage to the airplane may exceed the fair market value of a similar airplane that is safe to fly according to FAA rules and regulations.

71.    Defendants are damaged because their airplane has lost substantial value and unless it undergoes extensive, expensive, time-consuming repairs is grounded, not safe to fly and worthless.

72.    Defendants are further damaged because of their loss of use of the airplane has

negatively impacted the Defendants' business operations.  Defendants have had to pay hanger fees, insurance, and other associated fees without having access to their airplane.

73.     As a direct and proximate cause and result of Plaintiff's breach of duty and negligence, Defendants have been harmed and damaged in excess of $300,000 to be proven at trial.

## COUNT 2
## BREACH OF CONTRACT

74.     Defendants incorporate by reference the preceding paragraphs in this Answer as though stated herein word-for-word.

75.     Defendants into a contract with Elite for the purpose of having Elite upgrade the navigation and autopilot systems on its plane.  Prior to falling under Elite's control, the plane was safe to fly, or in the words of the FAA, the plane was "Airworthy."  Elite breached the contract when it made modifications that were not in compliance with FAA or manufacturer's specifications which culminated in April, 2019, when it delivered to the Defendants a plane that was unsafe to fly, not Airworthy.

76.     A breach of contract occurs, and damages arise when there exists an enforceable contract between two parties, one of the parties does not fulfill an element of the contract, and the other party suffers damages. *Smith v. Eisen*, 97 Ark. App. 130, 139, 245 S.W.3d 160, 168–69 (2006).

77.     Elite makes clear in its complaint that the parties entered a contract.

78.     After a several months of work by Elite employees, and as a result of Elite's actions, neither the navigation system or the autopilot system functioned as promised by Elite, nor as intended by the manufacturer.

10

79.     After several months of work by Elite employees, and as a result of Elite's actions, sections of the plane were damaged so badly that the aircraft is no longer Airworthy and the cost to make the plane Airworthy again will likely exceed the fair market value of the plane.

80.     After several months of work by Elite employees, and as a result of Elite's actions, the Defendants have suffered compensatory damages because the airplane is now worthless, and Defendants have suffered consequential damages because they no longer have use of the airplane for business operations.

81.     Elite has committed breach of contract, has damaged the Defendants, and is liable to them for compensatory and consequential damages.

82.     As a direct and proximate cause and result of Plaintiff's breach of contract, Defendants have been harmed and damaged in excess of $300,000, to be proven at trial.

## COUNT 3
## FRAUD

83.     Defendants incorporate by reference the preceding paragraphs in this Answer as though stated herein word-for-word.

84.     In Arkansas, fraud occurs if one party; (1) makes a false representation of material fact; (2) the party knows that the representation was false; (3) the party intends to induce action or inaction by the second party in reliance upon the representation; (4) the second party justifiably relied on the representation; and (5) the second party suffered damage as a result of the false representation. *Muccio v. Hunt*, 2016 Ark. 178, 4–5, 490 S.W.3d 310, 312–13 (2016).

85.     Elite represents itself to the public and to Defendants as an FAA certified flight station.  A maintenance facility that offers superior service which is performed by "skilled technicians," who install avionics that "deliver the standards the avionics manufacturer promised year after year."  Further, they represent themselves as avionics consultants who are well versed

11

experts (Exhibit "A").

86.     Elite made these representations as part of their advertising plan to induce Defendants and other customers to engage them to repair or upgrade their aircraft.

87.     Elite not only promotes itself as staffed by experts; its website contains testimonials purportedly by satisfied customers as to how good their work is (Exhibit "B"). Additionally, if asked, Elite management tells prospective customers that their work meets all FAA standards.  Defendants relied on the oral representations made by Elite employees and representations made in their website advertising in making their decision to enter a contract with Elite.

88.     The rules for repairing and upgrading an airplane are published by the FAA and manufacturers.  Elite knew or should have known that its mechanics did not follow FAA and manufacturer procedures when working on the plane.

89.     Plaintiff it is not listed on the FAA's list of certified flight stations and is not a certified maintenance facility.  Therefore, Plaintiff is not authorized to perform maintenance on the Defendants' or any other airplane but affirmatively represented is was authorized in order to induce the Defendants to engage the Plaintiff's.

90.     Plaintiff's repairs, even if it was an authorized maintenance facility, failed to comply with FAA rules in that it did not inspect each article upon which it performed alterations before representing to Defendants that the plane was safe and approving the airplane to return to service in violation of 14 C.F.R. § 145.213(a).

91.     Plaintiff, even if it was an authorized maintenance facility, acted in wanton violation of 14 C.F.R. § § 145.201(c)(1), when it knowingly authorized the airplane to be flown by Defendants knowing Plaintiff had not performed the upgrade/alteration in accordance with

the applicable approved technical data acceptable to the FAA.

92.     Inspection of the aircraft by an FAA certified third party after it was damaged by Elite shows multiple instances where FAA and manufacturer procedures were not followed. These discrepancies were clearly visible during the installation of the components and should have been found during post-maintenance inspections required by the FAA.

93.     The discrepancies are so severe that the FAA has opened an investigation as to what happened to the plane.  The investigation is ongoing.

94.     The actions by Elite will result in the plane needing extensive, expensive, and time-consuming repairs, other discrepancies should have been repaired during maintenance.  In any event, the plane should not have been represented as Airworthy and given to a customer to fly.

95.     On April 2, 2019, Elite affirmatively represented to the Defendants that the plane was safe to fly and Airworthy.

96.     Elite knew or should have known that their representation as to airworthiness was false, the airplane was not Airworthy.

97.     Elite made this affirmative representation, knowing it was false, with the intention of inducing the Defendants to fly the plane away from their facility, so they could charge Defendants money they did not earn.

98.     Defendants, in reliance of Elite's affirmative representations and assurances, and believing the advertisements and testimonials on Plaintiff's website, took possession of the plane and flew it home.

99.     As a result of Defendants' belief of Elite's representations, Defendants suffered both compensatory and consequential damages.

100.    As a direct and proximate cause and result of Plaintiff's fraud, Defendants have been harmed and damaged in excess of $300,000, to be proven at trial.

## COUNT 4
## VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES

101.    Defendants incorporate by reference the preceding paragraphs in this Answer as though stated herein word-for-word.

102.    It is unlawful to engage in false, deceptive, unfair, fraudulent acts and omissions in business, trade and commerce in the State of Arkansas with contracts and with consumers of products.

103.    Plaintiff represented and warranted that its repair facility as complying with FAA standards and knew, or should have known, that consumers, such as Defendants would rely on these representations and warranties.

104.    However, the repairs performed were not reasonable and prudent and in accordance with express representations made by Plaintiff to the Defendants in order to obtain Defendants' business and make profits.

105.    Plaintiff knowingly made affirmative representations in promotion, marketing, and advertisements that their repair facility was in compliance with FAA and manufacturer standards and resulted in superior, safe and reliable repairs and or upgrades.

106.    Plaintiff suppressed, concealed, and omitted the substantial and material maintenance and inspection procedural defects.

107.    Plaintiff's acts and omissions were false, deceptive, unfair, and unconscionable behavior in the course of business, trade, dealing with the public and customers who might contract with Defendants for aircraft repair. Ark. Code Ann. §§ 4-88-107(a)(10), and (b); AMI Civil 2900 (2012 ed.); AMI Civil 2902 (2012 ed.).  These acts and omissions are actionable

14

pursuant to Ark. Code Ann. § 4-88-113(f), which provides a private cause of action.

108.   Defendants reasonably relied on the false, deceptive, unfair and unconscionable acts and omissions by Plaintiff.

109.   Plaintiff's false, deceptive, unfair, and unconscionable behavior was the direct and proximate cause of the Defendants' damages.

110.   Defendants sustained serious and permanent injuries and are entitled to damages.

111.   As a direct and proximate cause and result of Plaintiff's false, deceptive, unfair and unconscionable acts and omissions, Defendants have been harmed and damaged in excess of $300,000, to be proven at trial.

## CONTINUED TOLLING AND FRAUDULENT CONCEALMENT

112.   Defendants incorporate by reference the preceding paragraphs in this Answer as though stated herein word-for-word.

113.   Throughout the time period relevant to this lawsuit, Plaintiff affirmatively concealed, suppressed and omitted material facts from Defendants pertaining to the defective and unsafe characteristics and unreasonably deficient condition of the Defendants' airplane. Plaintiff kept Defendants ignorant of vital information essential to the knowledge of and pursuit of their claims, and, as a result, Defendants could not have discovered the hidden and concealed defects, even upon the reasonable exercise of diligence.

114.   Plaintiff was aware of the problem with their repair, upgrade, and inspection procedures, or should have known of the problem, but continued to conceal and omit this information from Defendants where they knew or should have known the aircraft repairs they made to Defendants plane and were unsafe, defective and unreasonably dangerous for the intended consumer.

115.    As a direct and proximate result of the negligence, breach of contract, and other tortious acts and/or omissions as alleged herein, Defendants suffered injuries and damages as set forth herein, for which they are entitled to compensation.

116.    Defendants seek punitive damages for Plaintiff's reckless, malicious, knowing and intentional acts and omissions. Plaintiff acted in a reckless, malicious or deliberate manner from which malice may be inferred and knew or should have known that this conduct would naturally and probably result in damage to the Defendants.

117.    Plaintiff continued such conduct under circumstances in conscious or deliberate disregard of the consequences to Defendants, from which malice may be inferred.

118.    Punitive damages are needed to punish Plaintiff and deter it and others from similar conduct.

WHEREFORE, Ace Pools, LLC and Tracy Welchel Plaintiffs respectfully pray that:

a)      Plaintiff's complaint be dismissed with prejudice;

b)      Plaintiff take nothing, and attorney's fees and costs be awarded to Defendants for defending the complaint;

c)      Defendants be granted and awarded actual, compensatory, and consequential damages in a judgment against the Plaintiff for an amount in excess of the amount required for federal diversity jurisdiction and in excess of $300,000 to be determined at trial;

d)      Defendants be granted all other proper legal and equitable relief including pre-and post-judgment interest, attorney fees, costs and expenses, pursuant to Ark. Code Ann. § 16-22-308, Ark. Code Ann. § 4-88-113(f), and any other applicable law and to

recover any attorney's fees and costs incurred in recovering on any judgment against Plaintiffs.

                                            Respectfully submitted,

                                            By: */s/ William J. Changose*
                                            William J. Changose, AR2015165
                                            NATURAL STATE LAW, PLLC
                                            900 S. Shackleford Road, Suite 705
                                            Little Rock, AR  72211
                                            (501) 916-9848, phone
                                            (855) 415-8951 facsimile
                                            william.changose@natstatelaw.com
                                            Attorney for Defendants

## CERTIFICATE OF SERVICE

I, William J. Changose, do hereby certify that a true and correct copy of the foregoing Answer and Counterclaim has been served upon following counsel of record via U.S. Mail postage prepaid:

Virgil W Young (AR BAR No. 79142)
vyoung@virgilyoung.com
Paul A. Young (AR Bar No. 2016127)
pyoung@virgilyoung.com
Ashley Jordan Davis (AR BAR No. 2017034)
Hale & Young PLLC
4801 North Hills Blvd.
Ste. 1550
North Little Rock, AR 72116
Phone (501) 753-4800 Facsimile  (501)753-7477
*Attorneys for Elite Aviation Service, LLC*

on this the 18th day of July 2019

*/s/ William J. Changose*
William J. Changose, AR2015165



# (479) 715-4405

## Time left until ADS-B mandate

### 167 : 13 : 59 : 51
Days　　Hrs　　Mins　　Secs



HOME　　**WHY CHOOSE US?**　　AVIONICS　　NWAA　　SPRINGDALE　　VIDEOS　　CONTACT US

## Why choose us?

**Exhibit A**

Case 5:19-cv-05134-PKH   Document 5   Filed 07/18/19   Page 20 of 24 PageID #: 92

# Superior Service

We treat each customer like a partner every time we take on the task of any installation. All of our skilled technicians take pride in the work they do, knowing that our reputation is at stake with every job. Elite Avionics Service, Inc. ensures that our avionics installations provide trouble-free, high-quality performance that delivers the standards the avionics manufacturer promised year after year.



Elite Aviation Service, LLC

# Expert Avionics Consultants

All of our avionics consultants are well-versed experts. They have knowledge of all of the latest in avionics technology, as well as the older radios. You can be sure that when you talk to someone at Elite Avionics Service, Inc. you will be getting a recommendation based on years of experience from someone that knows the right equipment for your aircraft.

# NO SALES TAX on most Avionics Installations

# Tax Exempt

If your aircraft is over 12,000 pounds maximum certified takeoff weight, or your aircraft is from out of state you pay no additional sales tax on the cost of the avionics equipment or its installation at any one of Elite Avionics' facilities in the state of Arkansas. This can result in thousands of dollars in savings!

# Aircraft Pickup and Delivery

Short on time? Do you need help getting your aircraft picked up or delivered for avionics needs? Contact us or call us today; maybe we can help.



## Saturday Service

Elite Avionics Service, Inc. in Springdale, AR now offers a limited number of Saturday services by appointment only! Are you tired of your old avionics panel but just can't find the time to fit an upgrade into your schedule? Contact us or call us today to find out more.

## Satisfaction Guarantee

We stand behind our work 100%. Avionics is a complex beast, but our staff has the knowledge and experience to do it right - the first time. And on the rare occurrence that there is a problem, you have our guarantee that we'll do whatever it takes to make it right.

### Elite Avionics Service, Inc.

Home    Why Choose Us?    Avionics    NWAA    Springdale    Videos    Contact Us

Copyright © 2019 Web Site Design by Web.com Group, Inc.



## (479) 715-4405

### Time left until ADS-B mandate

**167 : 14 : 00 : 53**
Days   Hrs   Mins   Secs





**HOME**   WHY CHOOSE US?   AVIONICS   NWAA   SPRINGDALE   VIDEOS   CONTACT US

# Exhibit B

# FAA Renews ADS-B Rebate Program!

## Northwest Arkansas Avionics, Inc. (NWAA) Joined the Elite Avionics Service, Inc. Family

It is our satisfied customers that continue to be the key component to our continued success. Northwest Arkansas Avionics Inc. is experienced on all types of aircraft. We are dealers for most major Avionics Suppliers. NWAA has specialized in avionics troubleshooting, retrofits, and upgrades with superior customer service for 29 years. We also perform IFR and RVSM inspections. We would be happy to answer any questions you might have.



Northwest Arkansas Avionics, Inc. - Springdale



Elite Aviation Service, LLC Springdale



Elite Avionics Service, Inc Springdale

## Customer Comments

*"I am very pleased with the lighting and panel overlay. A nice enhancement to my aircraft. KUDOs to Charles and the crew at Elite Avionics."*
**- Ken Bell**



*"The team at Elite Aviation offers exemplary customer service going above and beyond their competition to ensure all your requirements are met in a timely fashion. Charles and his crew treat every customer as if they are VIPs, providing timely feedback and anticipating your requests. The improvements made in their facility over the past year have allowed them to service customers more efficiently and process aircraft quickly. I would definitely recommend Elite Aviation for your avionics needs."* – **Cleve – Coadmere Inc.**

# Elite Avionics Service, Inc.

Home    Why Choose Us?    Avionics    NWAA    Springdale    Videos    Contact Us

Copyright © 2019 Web Page Design by Web.com Group, Inc.